ANNIE BUDNER, ADMINISTRATRIX OF JULIUS LESKO, DECEASED, v. THE PUBLIC SERVICE CORPORATION OF NEW JERSEY.

Submitted December 8, 1906—Decided February 25, 1907.

1. It appeared in evidence that a passenger boarded an open car and attempted to get upon the front platform, and was told by the conductor to get off, and turned around and went along the runboard of the car, and then the car gave a sudden jerk when they put on full force, and the passenger fell to the ground and was injured. *Held*, in the absence of evidence to the contrary, that it was for the jury to say whether the defendant's negligence was established by this testimony.
2. The verdict for the plaintiff set aside, it appearing by the clear preponderance of evidence that the accident happened in an entirely different way, and that the passenger's own negligence contributed directly to the happening of the accident.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and GARRETSON.

For the plaintiff, *Freeman Woodbridge*.

For the defendant, *Willard P. Voorhees*.

The opinion of the court was delivered by

GARRETSON, J.    The plaintiff's intestate died in consequence of the fracture of his skull, received by falling from a car of the defendant, upon which he was a passenger, to the pavement in Albany street, New Brunswick. The deceased was at the corner of Albany and Nelson streets with Mary Kindle waiting for the car. He boarded it at that point, and while proceeding through Albany street, he fell off the car, about two hundred feet from Nelson street, and was killed.

The plaintiff having obtained a verdict against the defendant, the defendant seeks to set aside that verdict by this rule to show cause.

Sabo, a witness for the plaintiff, was standing on the same corner as the deceased, and thus describes the occurrence: He saw the deceased and a young lady with him; the car came along; an open car; and was crowded; and the deceased helped the young lady to board the car and then got on the run-board and the car started; the deceased after getting on the run-board went on up to the front and attempted to get on the front platform where the motorman was. Sabo testifies: "I heard him or the motorman, hollering; he says 'Get off, get off the car.' He says 'This is New Brunswick, get off,' and the man, he turns around and gets right off backwards, gets off the car backwards and catches one of those handles on the side of the car and he pulls that and reaches over the other one. He went on backwards and after he passed a couple of handles then the motorman he puts on full force of the car and kind of jarred the car like, and I don't know how it was, but he could not hold himself steady enough and it throwed him, he fell right down on his head." This place was about two hundred feet from where he had boarded the car, and what Sabo testifies to occurred while he, Sabo, was standing at the corner, and the car was moving along the track to the point two hundred feet away.

At another place Sabo testified that when the deceased was ordered off the car he went back to the rear, facing two of the poles with handles on them, reaching over the other one, reaching for the third one, then the car gave him a sudden jerk when they put on full force and then he fell, and that he saw the jar or jerk two hundred feet away.

Mary Kindle boarded the car at the same time as the deceased; testifies to his attempting to get on the front platform, being told by the motorman, "Here get out of here," and the deceased stepped back and he came back about two feet; he had hold of the handle, was leaning down, was looking, and tried to come back four seats where she was standing. Lesko had hold by the handle, she saw him only once falling down and the car gave just a jerk and he fell down. She also testifies that the jerk was sufficient to throw her hat back.

Had the only evidence been that the motorman put on the full force of the car "and kind of jarred the car like," or that the car gave a sudden jerk when they put on the force, the negligence of the defendant would not have been established. *Faul* v. *North Jersey Street Railway Co.,* 41 *Vroom* 795. But when we consider the evidence of the movement of the car in connection with what it is testified the motorman said to the deceased, and the movement of the deceased in response to the motorman's directions, the evidence was properly submitted to the jury to determine whether it established the defendant's negligence.

The deceased having been ordered by the motorman from the front platform, and while he was obeying the motorman's instructions, the speed was changed, it was for the jury to say whether the change of speed in the car evinced a disregard by the motorman of the safety of the deceased. *Corkhill* v. *Camden Suburban Railway Co.,* 40 *Vroom* 97, 99.

The question of the negligence of the defendant was properly submitted to the jury, but more than a dozen witnesses upon the car that the deceased fell off testified that they felt no jar or jerk of the car, and seven witnesses testified that when the deceased was on the run-board after the car started, his hat blew off and he reached or jumped for it and thus fell off the car and down upon the pavement and was injured.

The verdict is against the clear weight of the evidence, and the rule to show cause is made absolute.